IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL DANTE GARRETT, ) | |
| ID # 697364, ) | |
| Petitioner, ) | |
| vs. ) | No. 3:04-CV-0957-P (BH) |
| ) | ECF |
| NATHANIEL QUARTERMAN,[1] Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
| Respondent. ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

I. BACKGROUND

A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated robbery in Cause No. 92-39878-WV.[2] Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

---

[1] On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division. The Court thus substitutes him for Douglas Dretke. *See* Fed. R. Civ. P. 25(d)(1).

[2] In his reply to respondent's answer, petitioner asserts that he "is challenging and appealing the final judgment of the trial courts hearing, held on 23rd SEPTEMBER, 2002 A.D." Petitioner's substantive claims, however, go directly to the validity of his aggravated robbery conviction. Consequently, the Court considers the challenge to be against the aggravated robbery conviction.

**B. Procedural and Factual History**

On March 11, 1992, the State indicted petitioner for aggravated robbery with a deadly weapon in Cause No. F92-39878-WV, *see* TR[3] at 3, after the robbery and sexual assault of a woman at the garage of a local shopping mall, s*ee Garrett v. State*, No. 05-94-01144-CR, 1996 WL 283271, at *1 (Tex. App. – Dallas May 29, 1996, pet. ref'd) (setting forth background facts). The victim twice identified petitioner as her assailant – once from a photographic lineup and once at trial. *See* Statement of Facts, Vol. I at 11-31 [hereinafter cited as SF-volume # at page] (discussing the two identifications); SF-II at 101-02 (showing in-court identification at trial); 105-07 (discussing out-of-court identification). She testified that petitioner forced her to engage in sexual intercourse at knife point and stole her purse. SF-II at 90-100. At trial she identified the purse that was taken from her and identification cards that were in it. *Id.* at 103-04.

Prior to trial, the State tested a vaginal swab and clothing from the victim and blood samples from the victim and petitioner. *See* State's Exs. 16, 17, 18 (found at SF-III at 163-65). Initial testing of the swab and clothing detected potential "seminal fluid". *See* State's Ex. 16 (Forensic Report dated June 25, 1992). Testing of petitioner's blood sample revealed that he is blood type O, a secretor, and PGM 1+ 2+. *See* State's Ex. 17 (Forensic Report dated June 14, 1993). Testing of the victim's blood sample revealed that she is blood type O, a non-secretor, and PGM 1- 2-. *See* State's Ex. 18 (Forensic Report dated June 30, 1993). Forensic testing also revealed genetic markers from the swab (Blood Type O and PGM 1- 2-) and the clothing (Blood Type O and PGM 1+ 2+).

---

[3] "TR" refers to the trial records in Cause No. F92-39878-WV.

*See id.* The trial court admitted these reports at trial after redacting a reference to a different offense. SF-III at 37.

An expert testified at trial regarding the forensic testing done with respect to this case. *Id.* at 33-48. She testified that, although petitioner and the victim shared the same general blood type, ABO Type O, the two individuals differed in two respects: (1) petitioner was a "secretor" whereas the victim was not and (2) petitioner's type was 1+ 2+ whereas the victim's was 1- 2-. *Id.* at 42. She further testified that, because the victim was not a secretor, she would not secrete her ABO blood type into other bodily fluids, such as seminal fluids, vaginal secretions, and saliva. *Id.* at 41-43. She testified that testing of the vaginal swab revealed an ABO type O, which matches that of petitioner, and a PGM 1- 2-, which matches the victim. *Id.* at 43. She further testified that testing on the victim's clothing matched the petitioner's PGM 1+ 2+ and also matched his ABO type O. *Id.* at 43-44. She also testified that 8.64 percent of the "black population" would have the same three genetic markers as petitioner. *Id.* at 45-46.

At trial, Robert Beddow testified that, on the morning of the crime, he was driving petitioner home when petitioner asked to be dropped off at the mall because he could walk home from there. SF-II at 123, 129. Beddow testified that he acceded to the request and then went to his apartment. *Id.* at 130-31. He testified that, approximately twenty minutes later, petitioner arrived at his apartment seeking a ride home. *Id.* at 131-32. He testified that during the drive to petitioner's home, petitioner pulled a purse from under his sweater and told him that he had just robbed a woman. *Id.* at 133. He also testified that petitioner took an identification card from the purse to keep as a souvenir before tossing the purse into a storm drain. *Id.* at 134-36. Beddow led police authorities to the storm drain where the purse was found and gave them the souvenir identification card that

petitioner had left in his apartment. *Id.* at 139, 142-43, 157-59. Beddow identified the purse and identification card recovered by police officers as the same ones he saw with petitioner. *Id.* at 133-34.

A police investigation of the crime scene revealed footprints leading to a door handle that had petitioner's fingerprint on it. SF-III at 10-12, 17-21. At trial, petitioner denied the allegations against him and the testimony of Beddow, and explained the presence of his fingerprint as resulting from his prior employment at the mall. *Id.* at 76-78, 89.

On July 18, 1994, a jury convicted petitioner of aggravated robbery, and he was sentenced to ninety-nine years imprisonment. The Court of Appeals for the Fifth District of Texas at Dallas affirmed his conviction on May 29, 1996. *See Garrett v. State*, No. 05-94-01144-CR, 1996 WL 283271, at *1 (Tex. App. – Dallas May 29, 1996, pet. ref'd). On February 14, 1997, the Texas Court of Criminal Appeals refused a petition for discretionary review related to petitioner's conviction. In 2000, petitioner filed a state petition for writ of habeas corpus, S.H. Tr.-02[4] at 2, that the Texas Court of Criminal Appeals denied on September 27, 2000, *Ex parte Garrett*, No. 46,210-02, slip op. at 1 (Tex. Crim. App. Sept. 27, 2000). He thereafter filed a motion for post-conviction DNA testing, and in September 2002, the trial court held a hearing on that motion and denied it. *See Garrett v. State*, No. 05-02-01596-CR, 2003 WL 21757335, at *1 (Tex. App. – Dallas July 31, 2003, pet. dismissed as untimely). On December 12, 2003, petitioner filed a second state petition for writ of

---

[4] "S.H. Tr.-02" denotes the state habeas records attached to *Ex parte Garrett*, No. 46,210-02, slip op. (Tex. Crim. App. Sept. 27, 2000).

habeas corpus, S.H. Tr.-04[5] at 2, that the Court of Criminal Appeals denied on March 17, 2004, *Ex parte Garrett*, No. 46,210-04, slip op. at 1 (Tex. Crim. App. Mar. 17, 2004).

On May 5, 2004, the Court received the instant federal petition for writ of habeas corpus. On September 17, 2004, respondent filed its answer and provided the state-court records. Petitioner subsequently filed objections to the answer. (Petr. Garrett's Obj'ns [hereinafter referred to as Reply].)

## C. Substantive Issues

Petitioner raises the following claims in this action: (1) actual and factual innocence; (2) the State suppressed exculpatory evidence; and (3) ineffective assistance of counsel due to the suppression of evidence.

## D. Procedural Issues

Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to the claims raised in the instant petition. (Answer at 5.) He argues that the instant action is without merit and barred by the applicable statute of limitations (*Id.* at 5-16.) Petitioner argues that his claims are timely and entitle him to habeas relief. (Reply at 2-4.) Because respondent argues that petitioner's claims lack merit, the Court makes no ruling on the timeliness of the instant action, but instead proceeds directly to the merits of the claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions

---

[5] "S.H. Tr.-04" denotes the state habeas records attached to *Ex parte Garrett*, No. 46,210-04, slip op. (Tex. Crim. App. Mar. 17, 2004).

5

for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, no one disputes the applicability of the AEDPA standards to petitioner's claims.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry*

6

*v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's claims.

### III. ACTUAL AND FACTUAL INNOCENCE

In Claim 1, petitioner asserts that he is actually and factually innocent. (Pet. at 7.) He contends that the State suppressed a June 30, 1993 forensic report that exonerates him. (*Id.*; Supp. Mem. at 2; Ex. C attached to Supp. Mem.) He argues that the "DNA data" shows that he is "PGM O: 1+2+" whereas the robber/rapist is "PGM O: 1-2-." (Supp. Mem. at 2.)

With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter. *See Boyd v. Puckett*,

905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam). In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief. *E.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994). Petitioner thus cannot succeed on his actual innocence claim standing alone.

Petitioner, moreover, has not established that he is actually innocent. The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner has not met this standard. A jury found him guilty on the evidence presented against him. Although petitioner claims that the June 30, 1993 report was withheld from him and not presented at trial, the record shows that the allegedly withheld report was admitted at his trial in redacted form. *Compare* Ex. C (allegedly suppressed report) *with* State's Ex. 18 (redacted report admitted at trial); SF-III at 37 (showing that report was redacted to eliminate a reference to a different offense). Furthermore, the evidence that he claims exonerates him does not do so. Although the June 30, 1993 report indeed shows that the genetic marker PGM 1- 2- was detected in the vaginal swab, such genetic marker is entirely consistent with the victim. Such evidence was

8

presented to the jury, and did not result in an acquittal. In addition, the other evidence of record overwhelmingly shows that petitioner committed the aggravated robbery.

Because a claim of actual innocence is not cognizable on federal habeas corpus, and petitioner has not shown himself to be actually innocent in any event, this claim entitles him to no federal habeas relief.

## IV. SUPPRESSION OF EXCULPATORY EVIDENCE

In his second claim, petitioner asserts that the State suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Bagley*, 473 U.S. 667 (1985).

In *Brady*, the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. 373 U.S. at 87. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). Suppressed evidence is not considered material within the meaning of *Brady* when similar evidence is admitted before the trier of fact. *E.g., Jackson v. Johnson*, 194 F.3d 641, 650 (5th Cir. 1999); *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring). In any event, the touchstone inquiry remains "whether the evidentiary suppression 'undermines our confidence' that the factfinder would have reached the same result." *Id.* at 300-01.

In this instance, petitioner alleges that the State suppressed a Forensic Report dated June 30, 1993, which shows that testing of the vaginal swab detected the genetic marker PGM 1- 2- that does not match petitioner's genetic marker. As already discussed, this report was admitted at trial in redacted form, and the report is entirely consistent with the trial testimony of the forensic expert. The Court finds that the report was not suppressed by the State. Moreover, the report does not show petitioner to be actually innocent of aggravated robbery or otherwise exonerate him. In view of the overwhelming evidence of guilt at trial, the report is not material within the meaning of *Brady*, even had the State suppressed it. Petitioner's *Brady* claim entitles him to no habeas relief.

### V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In Claim 3, petitioner alleges that his trial counsel rendered ineffective assistance due to the alleged suppression of the forensic report. (Pet. at 7.) He claims that his attorney "abandoned lines of strategies and defenses that otherwise would have been pursued." (*Id.*)

The Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial. U.S. CONST., art. VI. To successfully state a claim of ineffective assistance of counsel

10

under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

In this instance, petitioner has shown no prejudice due to any deficiency of counsel. The Court has already found that the State did not suppress the June 30, 1993 forensic report, and that such report, even if had been suppressed, would have made no significant difference to the outcome of petitioner's trial. Petitioner has shown no reasonable probability that, in the absence of deficiencies of counsel related to the alleged suppressed report, the outcome of his trial would have differed. He presents nothing to undermine confidence in the verdict. Accordingly, petitioner is not entitled to habeas relief on this claim.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 29th day of September, 2006.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13